CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/15/2018
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| SUE E.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:17-cv-46 |
| | ) | |
| v. | ) | |
| | ) | By: Hon. Robert S. Ballou |
| NANCY A. BERRYHILL, | ) | United States Magistrate Judge |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

Plaintiff Sue E. ("Sue") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Sue alleges that the administrative law judge ("ALJ") (1) improperly discounted her credibility, (2) erred in giving great weight to a state agency physician, and (3) failed to develop the record. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Sue's Motion for Summary Judgment (Dkt. 12) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14).

# STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Sue failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Sue filed for DIB on May 29, 2013, claiming that her disability began on January 1, 2013. R. 124–25. The Commissioner denied Sue's application at the initial and reconsideration levels of administrative review. R. 58, 70. On November 10, 2015, ALJ Brian P. Kilbane held an administrative hearing to consider Sue's disability claim, which included testimony from Sue and vocational expert Casey Vass. R. 33–49. Sue was not represented at the hearing. Id.

On January 5, 2016, the ALJ entered his decision analyzing Sue's claim under the familiar five-step process,[3] and denying her claim for benefits. R. 14–28. The ALJ found that Sue suffered from severe spinal impairments including degenerative disc disease. R. 17. The ALJ

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

found that these impairments did not meet or medically equal a listed impairment. R. 18. The ALJ further found that Sue had the residual functional capacity ("RFC") to perform a full range of medium work, including lifting and carrying 25 pounds frequently and 50 pounds occasionally and standing, walking, and sitting about six hours in an eight-hour workday. R. 19.

The ALJ determined that Sue is capable of performing her past relevant work as a cashier, housekeeper, psychiatric aide, inserter, and bottle inspector. R. 26. The ALJ also found that Sue could perform competitive work that exists in significant numbers in the national economy, such as warehouse worker, laundry worker, and kitchen worker. R. 27. Therefore, the ALJ concluded that Sue is not disabled. R. 28.

Sue requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied her request for review. R. 1–3. This appeal followed.

## ANALYSIS

Sue alleges that the ALJ (1) improperly discounted her credibility, (2) erred in giving great weight to a state agency physician, and (3) failed to develop the record. I conclude that substantial evidence supports the Commissioner's decision on all grounds.

**Medical Evidence Prior to the Relevant Period**[4]

On July 11, 2012, Sue saw Maggie Wilkins, NP, reporting pain in her lumbar region, hips, right buttock, and low back that had worsened over several years. R. 240. Sue reported constant, throbbing pain that she sometimes rated as 10/10. Id. Ms. Wilkins diagnosed back pain and prescribed Ultram and diclofenac enteric. R. 241.

---

[4] The relevant period spans from January 1, 2013—Sue's alleged date of onset of disability—to January 5, 2016—the date of the ALJ's decision.

Sue saw Valerie Renninger, M.D., on November 12, 2012, reporting pain in her lower back. R. 237. Physical examination revealed normal findings. R. 238. Dr. Renninger diagnosed Sue with low back pain and degenerative disc disease and continued her on Tramadol. Id.

**Medical Evidence During the Relevant Period**

Sue saw Dr. Renninger for her bi-monthly checkup on January 16, 2013. R. 235. Sue requested a cortisone injection, explaining that she had one in October 2012 and it had helped her pain. Id. Physical examination revealed normal findings. R. 235–36. Dr. Renninger diagnosed low back pain, continued Sue on Tramadol, and administered a Solumedrol injection. R. 236.

Sue returned to Dr. Renninger on June 26, 2013, reporting that her lower back pain is "getting worse again." R. 229. Sue explained that the pain radiates into her right leg at times. Id. Sue requested a cortisone shot, and Dr. Renninger noted that she has not had one in about six months. Id. Physical examination revealed normal findings. R. 230. Dr. Renninger diagnosed degenerative disc disease, administered a Solumedrol injection, and instructed Sue to follow up in three months. Id.

Sue saw Dr. Renninger for a three-month checkup on September 27, 2013, and reported persistent low back pain. R. 250. Physical examination was normal other than Sue's sinusitis. Id. Dr. Renninger diagnosed low back pain and degenerative disc disease, increased Gabapentin, administered a Solumedrol injection, and instructed Sue to follow up in four months. R. 251. Sue did not seek medical treatment for her low back pain for almost two years.

Sue saw Andrew Stutesman, M.D., on August 6, 2015, reporting moderate to severe pain that is exacerbated by activity and work. R. 314. Sue described worsening low back and hip pain which was sharp, dull, aching, burning, stinging, and throbbing. Id. Dr. Stutesman reviewed

Sue's recent lumbar MRI, which showed "[l]umbar levoscoliosis with severe L3-L4 degenerative disc disease and mild retrolisthesis causing moderate central canal stenosis, severe right and moderate left foraminal stenosis. Milder degenerative changes at the remaining levels." R. 320. Sue declined a lumbar fusion with rods. R. 314. Physical examination was normal, except that Sue had scoliosis with her right leg shorter than her left leg. R. 315–17. Lumbar X-rays in July 2012 showed "[p]rominent degenerative disc disease with virtually complete loss of disc space at L3-4 level" and about four millimeters of retrolisthesis at L3-4. R. 315. Dr. Stutesman prescribed Mobisyl cream and referred Sue to physical therapy. R. 319.

Sue started physical therapy on September 17, 2015 to address her poor core, trunk, and hip stability as well as her chronic pain. R. 299. After almost a month of physical therapy, Sue reported on October 15, 2015 that her pain was particularly bad. R. 291. Her physical therapist explained that "[d]espite this she started to present with improved rotational trunk mobility since her last visit. She was also able to tolerate more activity than the previous week. . . . Overall mobility has improved and reports of pain remain unchanged." Id. The plan was to "continue to increase exercise tolerance for her therapeutic exercise in order to promote mobility of lumbar and thoracic spine. We expect [Sue's] confidence in her movement to continue to improve session by session." Id.

**Credibility**

Sue argues that the ALJ improperly discounted her credibility.[5] Specifically, Sue argues that the ALJ erred (1) in relying on the fact that none of her treating sources imposed restrictions

---

[5] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

5

that were more limited than the RFC, (2) in starting at Step Two of the two-step credibility analysis outlined by the Fourth Circuit in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), (3) by impermissibly drawing an inference from her rejection of surgery, and (4) by failing to explicitly utilize the factors outlined in Craig to evaluate her credibility.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and the ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A claimant's subjective allegations of disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. See 20 C.F.R. §§ 404.1529, 416.929 (2014). The ALJ must first determine if the claimant suffers from a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. If such an impairment exists, the ALJ must then determine the consistency of the claimant's subjective allegations by evaluating the claimant's medical history, medical signs, laboratory findings, objective medical evidence of pain, and "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Craig, 76 F.3d at 595 (citations omitted). If a claimant's statements are inconsistent with other evidence, the ALJ may find that the claimant's statements are overall outweighed by that other evidence after weighing both accordingly. See SSR 16-3p.[1]

---

[1] Here, SSR 16-3p was issued after the ALJ's consideration of Sue's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D. W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

In her function report dated January 9, 2013, Sue explained that on a typical day, she gets up and tries to get ready for work. R. 136. On days she cannot work, Sue takes a shower, cooks dinner, and stays in bed to relieve her pain. Id. Sue explained that her pain affects her sleep but stated that she is able to cook daily meals, perform light cleaning around her home, and do laundry. R. 137–38. Sue stated that she goes outside every day, and is able to drive a car, shop for groceries, and manage her finances. R. 139. Sue explained that she likes to fish, camp, watch TV, spend time with her husband, and talk to people at work and on the phone. R. 140. Sue explained that her pain has affected her ability to lift, squat, bend, stand, sit, kneel, climb stairs, and complete tasks. R. 141. Sue stated that her medications help with her pain, but do not cure her back problems. R. 143.

At the administrative hearing, Sue testified that she is currently employed through a staff agency and works about 30 hours a week. R. 38. Sue testified that she experiences back pain every day. R. 40. Sue stated that she could stand for about 10 to 15 minutes, stand and walk for about 10 minutes, and sit for about 10 minutes. Id. Sue explained that she can lift about 10 pounds, is able to prepare meals, and shop for groceries, but she stated that she is no longer able to fish. R. 41. Sue testified that she is able to take care of her personal hygienic needs and exercises every morning. R. 42.

The ALJ discussed Sue's subjective reports of pain and debilitating symptoms and provided a detailed narrative discussion of Sue's medical history both prior to and during the relevant period. The ALJ did not omit any relevant evidence in this discussion. The ALJ concluded that Sue's impairments could reasonably cause her alleged symptoms, but found that her subjective allegations were inconsistent with the objective medical evidence. R. 21. The ALJ complied with the Craig factors used to determine the consistency of a claimant's allegations by

7

discussing and citing to the relevant evidence in the record. The ALJ was not required to explicitly discuss each factor. See Taylor v. Astrue, No. 7:10–CV–149–FL, 2011 WL 2669290, at *2 (E.D.N.C. July 7, 2011) ("The ALJ must consider the entire record in making [a credibility] determination. . . . In addition to the objective medical evidence, the ALJ must consider a number of enumerated factors, such as the effect of symptoms on the claimant's daily life activities and the location, duration, frequency, and intensity of plaintiff's pain or other symptoms.") (internal citations omitted). Craig simply reiterates the mandate that the Social Security Regulations impose on the ALJ, that is, to evaluate all the subjective and objective evidence when evaluating the consistency of a claimant's allegations with the medical evidence.

The ALJ found that "no treating or examining acceptable medical source has assessed that the claimant has any greater work-related limitations of function than those [in the RFC]." R. 25. Sue argues that this finding is erroneous, as her primary care physician, Dr. Renninger, did not have the benefit of a July 2012 X-ray which showed prominent degenerative disc disease. This argument is unfounded. Sue was treated by multiple physicians after the July 2012 X-ray. At one of Sue's most recent appointments, Dr. Stutesman evaluated both the July 2012 X-ray and an August 2015 MRI, prescribed Mobisyl cream, and referred her to physical therapy. R. 319.

The ALJ found it significant that Sue worked through the relevant period. Evidence of work during the relevant period is a legitimate factor the ALJ may consider when determining the consistency of a claimant's subjective claims of disability. See 20 C.F.R. § 416.971. The ALJ discussed Sue's daily activities, noting that she cooked, did laundry, grocery shopped, made coffee, exercised, and worked. See Dolfax v. Astrue, No. 7:09-cv-67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in

determining the credibility of a claimant's allegations (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986))).

Sue argues that the ALJ drew an improper inference from her decision to decline a lumbar fusion with the placement of rods. The Social Security Regulations provide that the ALJ:

> must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p. The ALJ explained that Sue's subjective allegations were inconsistent with her rejection of "a proposed surgical solution to her alleged pain and with the general lack of findings on physical examinations." R. 26. The ALJ's narrative discussion provided citations to the record showing that physical examinations of Sue were consistently normal and that she was treated conservatively with physical therapy, cortisone injections, narcotic medications, Mobisyl cream, and physical therapy. The ALJ came to the conclusion that Sue's normal findings on physical examination, conservative treatment, and rejection of more radical, invasive treatment showed that her subjective complaints were inconsistent with the objective medical evidence.

I must give great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). I find that the ALJ's determination of the consistency of Sue's statements regarding the severity of her symptoms in light of the objective medical evidence is supported by substantial evidence.

**State Agency Physician's Opinion**

Sue argues that the ALJ erred in giving great weight to the medical opinion of R.S. Kadian, M.D., because he was a non-examiner who did not have the most recent MRI report.

On July 10, 2014, Saeed Jadali, M.D., rendered an opinion stating that Sue can sit, stand, and walk for six hours in an eight-hour workday, can lift and carry twenty pounds frequently, and can stoop, bend, crouch, and squat frequently. R. 277.

On July 17, 2014, state agency physician Dr. Kadian explained at the initial level of administrative review that Sue has degenerative disc disease with normal gait, strength, and range of motion. R. 66. Dr. Kadian stated that despite this impairment, Sue could lift and carry 25 pounds frequently and 50 pounds occasionally, stand and walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Id. Dr. Kadian explained that Sue has no postural, manipulative, visual, communicative, or environmental limitations. Id.

The ALJ gave great weight to the opinion of Dr. Kadian because he found Sue less limited than consultative examiner Dr. Jadoli, stating that he relied heavily on Sue's subjective report of symptoms and that the totality of the evidence does not support it. R. 26. The ALJ stated that Sue's ability to work 30 hours a week and do a significant amount of chores during the relevant period "weighs against fully adopting Dr. Jadoli's assessment." Id.

When the ALJ evaluates the opinions of non-treating physicians, the ALJ must weigh three factors: "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion." Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)

(citing 20 C.F.R. § 404.1527(c)(3)–(5)). More weight is "generally" given to a source who has examined the claimant than to one who has not. See § 404.1527(c)(1).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Sue argues that the ALJ erred in giving great weight to Dr. Kadian because he did not have the June 2014 MRI report, which showed "[l]umbar levoscoliosis with severe L3-L4 degenerative disc disease and mild retrolisthesis causing moderate central canal stenosis, severe right and moderate left foraminal stenosis. Milder degenerative changes at the remaining levels." R. 320. A physician need not have all the relevant evidence before him for his opinion to be accorded weight by an ALJ. See Tucker v. Astrue, 897 F. Supp. 2d 448, 468–69 (S.D. W. Va. 2012) (ruling that an ALJ complied with § 404.1527 when he declined to give controlling weight to the claimant's treating physician in part because the physician "did not have the benefit of reviewing all of the evidence of record"). Moreover, Dr. Stutesman evaluated the June 2014 MRI in August 2015, and did not make any findings or render an opinion that is more restrictive than

Dr. Kadian's opinion. In fact, Dr. Stutesman gave conservative treatment, prescribing Mobisyl cream and referring Sue to physical therapy.

I find that Dr. Kadian is knowledgeable of the Social Security Regulations and that his opinion was consistent with the objective medical evidence of record. Because the ALJ described both the objective medical evidence and Dr. Kadian's opinion in detail, a logical bridge was formed connecting the ALJ's conclusion to the record, allowing this Court to conduct meaningful judicial review. See Monroe, 826 F.3d at 189; DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [Commissioner]. . . . The [Commissioner] must present [the court] with findings and determinations sufficiently articulated to permit meaningful judicial review."). Accordingly, I find that substantial evidence supports the ALJ's decision to give great weight to the opinion of Dr. Kadian.

**Development of the Record**

Sue argues that the ALJ did not fulfill his duty to fully develop the record by failing to evaluate her claim with the benefit of the full June 2014 MRI report.

The regulations require the Commissioner to develop the claimant's "complete medical history for at least the 12 months preceding the month in which [the claimant files an] application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant says that the] disability began less than 12 months before [the claimant filed the] application." 20 C.F.R. § 404.1512(b)(1). If the evidence submitted is consistent and sufficient to make a disability determination, the Commissioner will make the decision based on that evidence. See 20 C.F.R. § 404.1520b(a). The Commissioner need only seek more evidence if the provided evidence is insufficient to make a disability determination. See § 404.1520b(b).

12

While the ALJ was not able to review the June 2014 MRI in full, the ALJ had Dr. Stutesman's impression of the MRI. Even if the exclusion of the full MRI report constitutes error, Sue has offered no evidence showing that such exclusion constitutes reversible error. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); Baron v. Astrue, No. 6:09–cv–00035, 2010 WL 3909926, at *4 (W.D. Va. Sept. 30, 2010) ("It is not enough for Plaintiff to show an error; rather, Plaintiff must show that the error is harmful.") (citation omitted). Here, there is nothing to suggest that the evidence of record was insufficient for the ALJ to render a disability determination. I find that the ALJ's decision to render a disability determination based on the evidence in the record is supported by substantial evidence.

## RECOMMENDED DISPOSITION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Sue's claim for benefits and in determining that her physical impairments would not significantly limit her ability to do a range of medium work. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Sue's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days

hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

    Entered: August 15, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge